UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | MAG. NO. 20-mj-35 (RMM) |
| | : | |
| **JACOB KYLE JORDAN,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) and 18 U.S.C. § 3142(d)(1)(A)(iii) of the federal bail statute. With an indictment now returned in this matter, the United States also seeks the defendant's pre-trial detention pursuant to 18 U.S.C. § 3142 (f)(1)(A). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

### I. Procedural History

At the initial appearance on February 26, 2020, the United States orally moved for detention pending trial pursuant to the above-referenced provisions of the federal bail statute, which was granted by the Court. The Court set a detention hearing for Friday February 28, 2020. On Thursday, February 27, 2020, the grand jury returned an indictment charging the defendant with one count of Possession with the Intent to Distribute more than 500 grams of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii),

and one count of Possession of a Firearm in Furtherance of Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1).

## II. Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210; Williams, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. 18 U.S.C. § 3142(e)(1).

A.   **Nature and Circumstances of the Offenses Charged**

As part of a coordinated, long-term investigation by Homeland Security Investigations (HSI) into interstate methamphetamine and the Virginia State Police, a cooperating source made arrangements to purchase approximately three pounds of methamphetamine from the defendant. On Tuesday, February 25, 2020, at approximately 9:00 p.m., the source met with the defendant at 1925 14th Street Northwest in Washington, D.C. and they walked to apartment 202 together. The defendant provided the source with three large Ziploc bags of methamphetamine, which later weighed approximately 1,461 grams, or 3.22 pounds.

At approximately 9:05 p.m. the source left the apartment at which time Metropolitan Police Department (MPD) officers and HSI special agents entered the apartment to search the premises with a Superior Court for the District of Columbia search warrant (Warrant No. 2020 CSW 1107) at approximately 9:06 p.m. The search team recovered 21 plastic bags of methamphetamine that weighed approximately 1701 grams, or 3.75 pounds, from inside a locked safe that was under a kitchen counter. The safe also contained nine gray pills of MDMA and numerous bottles of liquid that were sent to DEA for analysis. Approximately five feet from the safe, the search team discovered a loaded .40 caliber Smith & Wesson, semi-automatic handgun. In addition, the officers recovered approximately $12,500 in cash from a safe in the defendant's bedroom.

Law enforcement officers had previously verified with the apartment building management that the defendant was the lease holder of the apartment searched. The defendant was placed under arrest. During processing, the defendant was read his Miranda Rights which he waived and agreed to answer questions without an attorney present. The defendant admitted to giving

methamphetamine to the source. The defendant faces a substantial, mandatory-minimum prison sentence if he is convicted.

**B.      Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is very strong. This matter arises from a search that was conducted on the defendant's residence, pursuant to a D.C. Superior Court warrant. The defendant was the sole leaseholder of the residence and was present in the apartment when it was searched – immediately following a controlled purchase of methamphetamine. Additionally, various items of mail matter were recovered from the residence bearing the defendant's name and the subject address. Law enforcement actions during the search warrant, including the recovery of related evidence and contact with the defendant were all captured on body worn camera footage.

**C.      The Defendant's History and Characteristics**

The third factor, the history and characteristics of the person, similarly weigh in favor of the detention. The United States concedes that the defendant does not have any felony convictions. However, the volume of methamphetamine that he possessed and distributed—as well as the United States currency seized from his apartment—indicates that he is an experienced and successful drug trafficker, rather than a street-level dealer. Given its chemical volatility, methamphetamine is unlikely to be manufactured in the District of Columbia. Moreover, given federal restrictions on the purchase of pseudoephedrine, methamphetamine (and or its constituent chemicals) are increasingly-likely to be smuggled into the United States from foreign countries. Thus, by definition, the defendant is part of an interstate, if not international, narcotics conspiracy.

**D.     Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. Given that the charged offense is a Controlled Substances offense punishable by a maximum term of imprisonment of more than ten years and therefore meets the criterial of 18 U.S.C. § 3142(f)(1)(C), it carries with it a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" where a judicial officer determines that there is probable cause to believe that the person committed the charged offense. 18 U.S.C. § 3142(e)(3) and (e)(3)(A). An indictment establishes the requisite probable cause and triggers the presumption. See, e.g., United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("the indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community").

Under the Bail Reform Act, 18 U.S.C. §§ 3142 et seq., "[t]he statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." United States v. Strong, 775 F.2d 504, 506 (3d Cir. 1985). Its legislative history also "fully supports the conclusion that Congress intended to equate drug trafficking with danger to the community." Strong, 775 F.2d at 507. As noted by the D.C. Circuit:

> The legislative history indicates that the rebuttable presumption covering serious drug trafficking offenses was included because:
>
> "Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the

extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and the foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences."

United States v. Alatishe, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203). Thus, in creating a presumption of pretrial detention for serious drug trafficking offenses, both the legislative history and the statutory language recognize the inherent, "real world" dangerousness and risk of flight posed by those who commit serious drug trafficking offenses.

The presumption is rebuttable and does not shift the ultimate burden of proof from the United States' shoulders. Rather, it creates a burden of production on the defense to submit at least some credible evidence that might purport to overcome it. Even if the defense does submit such evidence, the presumption retains "evidentiary weight" and may be considered by the Court in determining whether the defendant should be detained. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted); see also United States v. Rueben, 974 F.2d. 580, 586 (5th Cir. 1992) (the mere production of evidence [regarding flight risk for a drug offense] does not completely rebut the presumption . . . . In making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society" (citation omitted); United States v. Rodriguez, 950 F.2d 85, 88 (2nd Cir. 1991) ("Although the government retains the burden of persuasion, a defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption . . . . Once a defendant

introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant.") (citing United States v. Jessup, 757 F.2d 378, 382-83 (1st Cir. 1985)); see also United States v. Ali, 793 F.Supp.2d 386, 388 and 388 n.2 (D.D.C. 2011) ("Even if such contrary evidence or credible proffers are offered, the presumption remains as a factor to be considered by the Court amongst others in determining whether the defendant should be detained").

Notwithstanding the defendant's lack of criminal history, the mere fact of his possession of seven pounds of methamphetamine and a loaded firearm demonstrates that he is a danger to the community. Given the chemical volatility of methamphetamine it is, by its very nature, dangerous to anyone who is near it. Further, the defendant kept a loaded firearm in an apartment building surrounded on all sides by restaurants, retail stores, night clubs, and yoga studios. The defendant's behavior has the potential to cause serious bodily injury to or the death of innocent persons in the community. In the end, the defendant cannot overcome the statutory presumption that in order to protect the community, and he should be held without bond pending trial.

### III. Conclusion

While the defendant's lack of criminal history may tip the scales in favor of release as to one of the four categories that must be considered by the Court, the remaining factors all weigh heavily in favor of detention. This is especially true considering the rebuttable presumption in this case, and the possibility that the defendant—who has never served meaningful time in prison—will find the prospect of a lengthy mandatory minimum sentence to be sufficiently onerous that he is willing to risk the consequences of fleeing the jurisdiction.

The United States respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

TIMOTHY J. SHEA
United States Attorney
D.C. Bar No. 437437

By: /s/ 

JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Violent Crime & Narcotics Trafficking Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel, Danielle C. Jahn via the Electronic Case Filing (ECF) system, this 27th day of February, 2020.

By: _____
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Violent Crime & Narcotics Trafficking Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov